**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| SUSAN BERGNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 3:09-CV-242 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Supplemental Security Income to Plaintiff, Susan Bergner. For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

On July 29, 2004, Plaintiff, Susan Bergner ("Bergner"), applied for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Bergner claims she became disabled on March 22, 2004, due to symptoms associated with Meniere's disease, depression, obesity and knee replacement. The

Social Security Administration denied her application initially and upon reconsideration. On March 18, 2008, Bergner appeared at an administrative hearing before Administrate Law Judge ("ALJ") James Norris. Testimony was provided by Bergner, Richard A. Huston, M.D. (impartial medical witness and board certified orthopaedic surgeon), Jack E. Thomas, Ph.D. (impartial medical witness and board certified clinical psychologist), and Constance R. Brown (impartial vocational witness and certified rehabilitation counselor).

A supplemental hearing was held on June 30, 2008, where Plaintiff appeared and additional testimony was provided by Dr. Thomas and Stephanie R. Archer (impartial vocational witness and certified rehabilitation counselor). On September 8, 2008, ALJ James Norris denied Bergner's SSI claim, finding that, during the period from March 22, 2004, (Bergner's alleged onset date) to September 8, 2008 (the date of the ALJ's decision), Bergner had not been "disabled" as defined in the Social Security Act.

Plaintiff requested the Appeals Council review the ALJ's decision. This request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Brown has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). This Court now properly reviews the Commissioner's final decision.

DISCUSSION

Facts

The claimant, Susan Bergner, was born on June 8, 1964. (Tr. 22). On June 9, 2004, claimant was 68 inches tall and weighed 260 pounds for a Body Mass Index (BMI) of 39.5. (Tr. 23). At the time of her examination by ALJ Norris, Bergner was 44 years of age. She is a high school graduate (Tr. 22), but has never performed any work activity for sufficient duration in her lifetime and thus has no past relevant work. (Tr. 34). Bergner alleged that she suffers from Meniere's disease, failed right knee replacement, morbid obesity and bipolar I disorder (primarily depressed). (Tr. 355-356, 476, 485, 487, 501). Bergner alleges that she became disabled on March 22, 2004, due to symptoms associated with Meniere's disease, depression, obesity and knee replacement. (Tr. 148).

The medical evidence of record establishes the following: Bergner was diagnosed with Meniere's disease in 2004. (Tr.476-478). Due to this condition, she suffers from ringing in the ears, vertigo, and fluctuating hearing loss. (Tr.477). This disease also causes her to suffer from poor balance and disequilibrium. (Tr.272, 477, 479-484).

Bergner first had right knee replacement surgery in September of 2004. (Tr. 229, 360). Dr. Chung Kiel Kim, an orthopaedic surgeon, performed both knee replacement surgeries on Bergner, and was her treating orthopaedic surgeon for all follow-up care.

(Tr.485, 1027-1029). Due to ongoing stiffness and pain in her right knee, Bergner was put under general anesthesia for manipulation of the joint to improve the range of motion on November 19, 2004, and again on May 5, 2005. (Tr.222, 492). Bergner also underwent open release of adhesions to the right knee in December of 2005 at St. Mary's Hospital. (Tr. 492). On May 16, 2005, Dr. Kim opined that Bergner was totally incapacitated, and needed pain management. (Tr.485). On October 26, 2005, the claimant complained of chronic pain and problems due to knee prosthetic problems. In response, Dr. Kim wanted to do revisions but the claimant refused. (Tr. 29, 30). Based upon his treatment and examinations of Bergner, Dr. Kim determined that Bergner was unable to even walk one block without pain, and would be unable to sit or stand for even 30 minutes without discomfort. (Tr. 1028).

John J. Haskin, M.D., noted that Bergner had been his patient at Michiana Behavioral Health Center since July of 2004. (Tr. 501, 539). At that time, Dr. Haskin noted that the claimant was obese, her memory was intact, I.Q. was average, she presented no evidence of hallucinations, delusions or paranoia, her concentration was good, speech well modulated, she used appropriate descriptive vocabulary, was insightful and verbal, ambulated with difficulty and it appeared sitting in chair caused her discomfort. (Tr. 23). Dr. Haskin noted claimant's diagnoses included major depressive disorder, recurrent, severe, without psychosis and anxiety disorder.

(Tr. 23). The claimant's Global Assessment of Functioning ("GAF") was noted to be 65, indicating some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and having some meaningful interpersonal relationships. (Tr. 23-24). Further, claimant was noted to have a moderate hearing loss. (Tr.24). Throughout the next few years, claimant's GAF assessments fluctuated between 20 on the low end in June of 2005 and upwards of 75 in November of 2004. (Tr. 24-25). The low GAF scores were based on a diagnosis of bipolar disorder, which Jean Badry, Ph.D. later disputed. (Tr. 24). Based upon his treatment of Bergner, Dr. Haskin determined that Bergner was not employable in any capacity due to her absence of people skills, mood, and unpredictable psychotic episodes. (Tr. 539). Bergner further was found to have a poor attention span, poor concentration, poor communication skills, would occasionally experience hallucinations, and experienced suicidal thoughts on a daily basis. (Tr. 501, 539).

Claimant was examined by Dr. Badry on August 24, 2007 and was subjected to a number of tests including the Minnesota Multiphasic Personality Inventory-II ("MMPI-2") and Beck Depression Inventory ("BDI"). (Tr. 26). Prior to the tests, claimant offered a self-report and Dr. Badry opined that if the information claimant reported was accurate and correct she would not be able to live independently. (Tr. 26). Dr. Badry noted claimant's cognitive

processing to be slow, but noted that this was possibly due to unknown amount of pain medication she took just before coming to the evaluation. Dr. Badry questioned claimant's motivation, cooperation and persistence in the MMPI-2 and BDI tests, specifically noting that claimant's attempts at the tasks appeared to be an under-representation of her cognitive functioning. Additionally, Dr. Badry stated that the results of the MMPI-2 profile were invalid, indicating the claimant responded to items in an extremely exaggerated manner, endorsing a wide variety of rare symptoms and attitudes. Similarly, Dr. Badry noted that on the BDI the claimant demonstrated excessive symptoms checking. Dr. Badry also found the claimant was not compliant with the suggestions of her medical providers; in particular, failing to obtain individual face to face therapy or be seen by a pain management specialist, having a miscount on medications, and possible misuse of her pain medication. (Tr. 27). Further, Dr. Badry found nothing to support a diagnosis of bipolar disorder. (Tr. 27). However, Dr. Badry found that Bergner had marked limitations in all areas of her ability to understand, remember, and carry out instructions. (Tr. 453). Also, Dr. Badry noted that Bergner was suffering from major depression, and assigned a GAF of 45. (Tr. 452).

## REVIEW OF THE COMMISSIONER'S DECISION

### Standard of Review

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). This Court must affirm the Commissioner's factual findings if they are supported by substantial evidence. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). While the ALJ "must build an accurate and logical bridge from the evidence to the conclusions," he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). However, this Court reviews the ALJ's findings of law *de novo* and, if the ALJ makes an error of law, this Court may reverse without regard to the volume of evidence in support of the actual factual findings. White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999). *See also Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009).

### Analysis of Social Security Act

To be considered for SSI benefits, a claimant must establish that she is disabled. To qualify as being disabled, the claimant

must demonstrate that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(1), 1382c(a)(3)(A). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

| | |
|---|---|
| Step 1: | Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2. |
| Step 2: | Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3. |
| Step 3: | Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4. |
| Step 4: | Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner. |
| Step 5: | Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled. |

20 C.F.R. §§ 404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v). *See also Barnhart v. Thomas,* 540 U.S. 20, 24-25 (2003); *Dixon,* 270 F.3d at 1176. If the claimant reaches step five, the burden shifts to the Commissioner to show that the claimant is capable of performing work

in the national economy. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001).

ALJ Norris correctly applied the 5-step disability evaluation. At Step 2, ALJ Norris found that Bergner established a "severe impairment" within the meaning of the regulations with respect to her status post bilateral total knee replacement; additionally, the ALJ noted that claimant has established that she is obese and has mild or minimal mood disorder with no psychological limitations or restrictions (Tr. 38). Proceeding to Step 3, ALJ Norris found that Bergner did not suffer from an impairment or combination of impairments that qualifies as one of the listed impairments under 20 C.F.R. sections 404.1520(d), 404. 1525, and 404.1526 (Tr. 39). ALJ Norris then concluded that Bergner had the residual functional capacity to perform sedentary work activity requiring use of a cane (Tr. 39). Thus, Bergner's claim failed at step 4 of the evaluation process. Bergner believes that ALJ Norris committed several errors requiring reversal, each of which will be addressed in turn.

<u>Issue 1: Whether the ALJ Failed to State</u>
<u>Sufficient Grounds for Rejecting the Opinions</u>
<u>of Plaintiff's Treating Physicians, Dr. Haskin and Dr. Kim</u>

Bergner first argues that ALJ Norris failed to give controlling weight to the opinions of Bergner's treating physicians, John J. Haskin, Jr., M.D. (her psychiatrist) and Chung Kiel Kim, M.D. (her orthopaedic surgeon) in violation of Social Security Ruling ("SSR")

96-2p. SSR 96-2p provides that a treating physician's medical opinion must be given controlling weight if it is "well supported and not inconsistent with other substantial evidence in the case record." The ALJ must give controlling weight to a treating physician's opinion "only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record." *Brihn v. Astrue*, 332 Fed.Appx. 329, 332, 2009 WL 1668612, 3 (7th Cir. 2009)(quoting *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008)). An ALJ may discount the opinion of a treating physician if it inconsistent with the opinion of a consulting physician or is internally consistent as long as he "minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Clifford*, 227 F.3d at 871. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

How much weight the ALJ affords depends on consideration of a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (internal citations omitted). SSR 96-p requires the ALJ to speak with specificity in attributing weight to a treating source's

medical opinion, SSR 96-2p. *See also* 20 C.F.R. § 404.1527(d)(2). However, if the ALJ discounts the physician's opinion after considering these factors, a reviewing court must allow that decision to stand so long as the ALJ minimally articulates their reasons; a very deferential standard that has, in fact, been deemed "lax." *Id.* Indeed, an ALJ need only minimally articulate his reasons for rejecting evidence of a disability and is not required to provide a written statement about every piece of contradictory evidence in the record. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ need only build an "accurate and logical bridge from the evidence to the conclusion" so that the reviewing court can assess the validity of the decision. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

Dr. Haskin

Plaintiff contends that ALJ Norris accorded no weight to her treating psychiatrist, Dr. Haskin, specifically arguing that the ALJ "wholly failed to discuss the reasons behind the rejection" and that there is "absolutely no evidence in the record that is not consistent" with Dr. Haskin's opinion. Dr. Haskin began treating Bergner in July of 2004 (Tr. 501, 539) and it is not disputed that Dr. Haskin is a treating physician within the meaning of SSR 96-2p. Dr. Haskin determined that Plaintiff is not employable in any

capacity due to her absence of people skills, mood instability, and unpredictable psychotic episodes. (Tr. 539). Plaintiff argues that Haskin's findings are corroborated by a consultative examiner, Jean M. Badry, Ph.D. (licensed psychologist). (Tr. 452).

The ALJ acknowledged the assessment and limitations found by Dr. Haskin (Tr. 23-25, 31); however, he afforded Dr. Haskin's opinion less weight on the grounds that 1) Dr. Haskin's assessments (i.e., GAF) were based in part on a diagnosis of bipolar disorder which is not supported by the medical record (Tr. 24); 2) were not supported by Dr. Badry's objective evaluations (including an invalid MMPI-2); and 3) are largely based on Bergner's self-reporting of her symptoms (Tr. 29, 31). An ALJ may give less weight to a doctor's report that is based solely on the claimant's "own statements about his functional restrictions at the time of the examination." *Drea v. Barnhart*, 58 Fed.Appx. 225, 228, 2003 WL 352047, 3 (7th Cir. 2003) (quoting *Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir. 1995)); *see also Dixon v. Massanari,* 270 F.3d 1171, 1178 (7th Cir. 2001) ("An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations."). Here, the ALJ took issue with the findings of Drs. Haskin and Badry. ALJ Norris noted the inconsistency of Dr. Haskin's opinions with the rest of the record and noting the invalid test results and lack of objective medical evidence relied upon by Dr. Badry. (Tr. 31). The ALJ expressly offered valid reasons for why he afforded Dr. Haskin

less weight, thereby satisfying the low threshold required upon review.

Likewise, ALJ Norris sufficiently offered substantial evidence as to why he heeded the opinion of the Dr. Thomas, impartial medical witness, noting Dr. Thomas' board certification in clinical psychology, 26 years plus experience as a licensed psychologist, experience as a medical witness, familiarity with Social Security Law and Regulations, and the fact that Dr. Thomas reviewed the entire medical record. (Tr. 33, 38). The law is clear that an ALJ need not list and explain every fact that he considered or that exists in the record, *Dixon*, 270 F.3d at 1176; rather an ALJ's determination will be upheld if he gives at least a minimal articulation of why a line of evidence was rejected. *Clifford*, 227 F.3d at 871. When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision. *Dixon*, 270 F.3d at 1178. The ALJ provided as much here.

### Dr. Kim

Plaintiff also argues that the ALJ failed to give weight to the opinion of her treating orthopaedic surgeon, Dr. Kim, and that the ALJ failed to specify his reasons for doing so. Following Bergner's knee surgeries, Dr. Kim determined that Plaintiff was totally incapacitated (Tr. 485) and was unable to walk one block or to

-13-

sit/stand for 30 minutes without discomfort (Tr. 1028). Plaintiff contends that Dr. Kim's opinions were not discussed anywhere in the ALJ's decision, and, thus, an entire line of evidence was not considered. However, ALJ Norris did acknowledge Dr. Kim's finding on May 16, 2005, that Bergner, at that time, was totally incapacitated. (Tr. 31). ALJ Norris went on to note that, in light of her knee surgeries, Plaintiff required a reasonable period of recuperation, and that Dr. Kim did not indicate that the claimant would be totally incapacitated for 12 continuous months, as required by the Act. (Tr. 31).

In the decision, the ALJ did not discount Dr. Kim's findings; rather, the ALJ adopted a narrow reading of Dr. Kim's opinions as to Bergner's orthopaedic condition. The record does not establish nor support that Dr. Kim's 2005 opinion that Bergner was "totally incapacitated" was anything other than a statement as to Bergner's condition at that time and not a resolving diagnosis. Rather, the record suggests that Dr. Kim's opinion was ephemeral as his 2007 diagnosis that Plaintiff was unable to walk one block or to sit/stand for 30 minutes without discomfort (Tr.1028); a different conclusion from "totally incapacitated" and not inconsistent with Dr. Hutson's opinion of Bergner's residual functional capacity to be limited to sedentary work activity requiring the use of a cane (Tr. 32), nor with the ALJ's determination that Bergner has a severe impairment of status post bilateral total knee replacement. (Tr.

-14-

38). Thus, Dr. Kim did not note that Bergner's status post-knee surgery was a permanent condition; rather, other evidence in the record and the testimony of Dr. Huston, impartial medical witness and orthopaedic surgeon, indicated that patient improved to a degree and did establish a severe impairment (status post bilateral total knee replacement).

With regard to Dr. Hutson, the ALJ noted the weight he afforded Dr. Hutson's testimony: noting his board certification in orthopaedic surgery, 42 years plus experience as a licensed physician, experience as a medical witness, familiarity with Social Security Law and Regulations, and the fact that Dr. Hutson reviewed the entire medical record. (Tr. 31, 37-38). The ALJ provided substantial evidence as to the weight accorded to Hutson and satisfied the low threshold for minimal articulation.

Issue 2: Whether the ALJ Adequately
Addressed Plaintiff's Claim of Meniere's Disease

Bergner also contends that the ALJ erred by failing to find and consider claimant's Meniere's disease a severe impairment in violation of SSR 96-3p. The ALJ stated that he considered Bergner's health conditions in the aggregate, ruling that Bergner did not have "an impairment or combination of impairments" that equaled a listed impairment. (Tr. 39).

An ALJ is required to evaluate all limitations that arise from medically determinable impairments, even those that are not severe,

and may not simply dismiss a line of evidence that might be contrary to the ruling. S.S.R. 96-8p; *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009). The ALJ's opinion does not reference Bergner's claim of Meniere's disease which she has alleged causes her ringing in ears, vertigo, fluctuating hearing loss, poor balance and disequilibrium. (Tr. 272, 477, 479-484). Nor does the ALJ's decision reference these symptoms or their effects in combination or as part of Bergner's other maladies.

The government contends that determination of severity is merely a threshold requirement and it does not matter whether the ALJ explicitly considered the effects of Bergner's Meniere's disease as the functional residual capacity determination requires the consideration of all limitations and restrictions imposed by a claimants' impairments whether or not they are severe. However, the ALJ's failure to at least minimally articulate some scintilla of fact that would allow a reasonable mind to conclude that he at least considered, directly or indirectly, Plaintiff's alleged impairment constitutes reversible error and warrants remand. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

Although the ALJ's conclusion may ultimately result in being reasonable, whatever reasons the ALJ had for discounting the Meniere's Disease are not sufficiently communicated in his opinion. Because this constitutes legal error, this case must be remanded for further consideration.

Issue 3: Whether the ALJ had an Adequate Factual
Basis for Making an Adverse Credibility Determination

Bergner contends that the ALJ failed to provide an appropriate basis in which to find that Bergner was less than totally credible in violation of SSR 96-7p, arguing that ALJ Norris failed to identify any legitimate basis for such a finding in the decision. Specifically, Plaintiff references the ALJ's thrice-repeated, incorrect statement that Bergner failed to show for the supplemental hearing on June 30, 2008, and that this did not reflect well on the sincerity of Plaintiff's claim. Bergner further argues that the ALJ failed to enumerate legitimate reasons for rejecting her testimony and that he failed to reconcile the unfounded rejection with the overwhelming proof of her claim.

Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is patently wrong. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *Getch*, 539 F.3d at 483. When a claimant produces medical evidence supporting the existence of impairment, the ALJ must support his credibility determination with record evidence sufficiently specific to make clear to the claimant and to any subsequent review the weight given to the claimant's statements and the reasons for that weight. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). Furthermore,

Social Security Regulations require that an ALJ articulate "specific reasons" behind credibility evaluations. SSR 96-7p; *Steel v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

The ALJ must consider specific factors when assessing the credibility of an individual's statement including:

1. The individual's daily activities;

2. The location, duration, frequency and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effect of any medications the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. *See also Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir.2003). Despite these requirements, not all of the ALJ's reasons must be valid as long as enough of them are. *Halsell v. Astrue*, 2009 WL 4913322, 5 (7th Cir. 2009); *See, e. g. Simila v. Astrue*, 573 F.3d 503, 517, 520 (7th Cir. 2009) (Claimant's work history one of factors considered in credibility determination); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

Bergner is right to question the ALJ's incorrect statements concerning her alleged absence at the supplemental hearing; the

record shows that Bergner was in attendance at the supplemental hearing (Tr. 1021) and the Government concedes this point. However, the ALJ did provide more than enough substantial evidence to support his adverse credibility finding. The ALJ correctly considered the following in making a credibility determination as to Bergner: allegations by Plaintiff's medical providers of possible abuse of her prescription drugs (Tr. 26, 27, 28, 30, 37), possible symptom exaggeration by Plaintiff in her psychological testing (Tr. 26, 27, 28, 29), Plaintiff's medical providers questioned Plaintiff's motives in her psychological testing (Tr. 26, 27, 28, 36), Plaintiff was not compliant with medical provider suggestions (Tr. 27, 29, 37) and that claimant never performed any work activity for sufficient duration in her lifetime (Tr. 34, 36). The ALJ adequately articulated his reasons for discrediting Bergner's testimony and provided substantial evidence to support his decision. Given the number and magnitude of the reasons the ALJ offers to discredit Bergner, it is very unlikely that the ALJ's factual error concerning Bergner's attendance at the supplement hearing significantly altered the result. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. (Ill.)1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Under these circumstances, the court cannot find that his assessment of Bergner's credibility was patently wrong. However,

upon remand, the ALJ is surely free to revisit this issue and determine whether Bergner's presence at the supplemental hearing would alter his credibility finding.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

DATED: July 7, 2010  /s/RUDY LOZANO, Judge
  **United States District Court**